# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

**REBECCA S. ATKINS,** *on behalf of herself and all similarly situated consumers*,

        **Plaintiff,**

v.

**BANK OF AMERICA, N.A.,**

        **Defendant.**

Civil Action No. 3:24cv227

## CLASS ACTION COMPLAINT

Plaintiff Rebecca S. Atkins, on behalf of herself and all similarly situated consumers, files this Complaint against Defendant Bank of America, N.A. ("BOA" or "Defendant") and alleges as follows:

## PRELIMINARY STATEMENT

1. This case concerns BOA's practice of enforcing home equity debts against consumers who had no opportunity to prevent the accumulation of those debts because BOA elected not to send the consumers monthly statements as required by federal law and their loan contracts.

2. In 2005, Ms. Atkins obtained a Home Equity Line of Credit ("HELOC") from Defendant Bank of America to finance several upgrades to her home, with a credit limit of $60,000.

3. The terms of the HELOC required monthly statements notifying Ms. Atkins if there is an outstanding balance on her loan, and the amount of her minimum payment due, including interest and fees.

4.     The Truth In Lending Act ("TILA") and its enacting regulations similarly required BOA to provide monthly statements if there was an outstanding balance on the account. If there was, BOA was required to disclose the amounts she owed, including interest and fees.

5.     Ms. Atkins remained current on both her primary mortgage and her HELOC until 2018, when after she fell behind on some payments, Bank of America charged off the remaining debt on the HELOC. After this charge off, Ms. Atkins stopped receiving monthly statements that would have informed her of her account balance and any interest and late fees accruing on that balance. Even without these statements, Ms. Atkins made partial payments on the HELOC debt until December 2019, which BOA accepted as satisfaction of her obligations under the HELOC.

6.     Ms. Atkins had not rec received any monthly statements that would have disclosed the alleged amounts owed and accrued on the HELOC account and allowed her to avoid the accumulation of debt that BOA was now claiming she owed.

7.     Worse, after years of silence, in February 2024, BOA sued Ms. Atkins in state court seeking the amounts that Ms. Atkins does not owe.

8.     BOA's conduct has caused Ms. Atkins significant financial and emotional harm, including but not limited to a reduction in her present and future home equity; deferral of repayment on her legitimate debts; emotional distress caused by the state court lawsuit; and distress from the threatened loss of her home after over three decades.

9.     Ms. Atkins is far from the only victim of these practices; indeed, as discovery will show, it is apparently standard policy and practice for BOA to breach its agreement to provide monthly statements, as well as federal law, and to demand payment of amounts due pursuant to the HELOC, when no such statements were provided.

10. BOA's conduct violates TILA and Regulation Z, which require creditors like BOA to send periodic statements when the creditor asserts there is a balance outstanding on a HELOC account. *See* 15 U.S.C. § 1637(b) ("The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement . . . ."); 12 C.F.R. § 1026.7(a) (same).

11. BOA's conduct also breaches the terms of the HELOC, which required it to send monthly statements for any billing cycle in which there was account activity. At a minimum, BOA waived its right to retroactively assess principal, interest, and fees when it elected not to send statements disclosing the assessed amounts to Ms. Atkins and similarly situated consumers.

12. With BOA continuing to seek thousands in undisclosed debt against her, Ms. Atkins brings this action on behalf of herself and similarly situated consumers for violations of TILA and breach of contract. Ms. Atkins also seeks declaratory relief for herself and the putative class members under the Declaratory Judgment Act, 28 U.S.C. § 2201.

## JURISDICTION AND VENUE

13. This Court has federal question jurisdiction under 28 U.S.C. § 1331. It also has supplemental jurisdiction over Ms. Atkins's state law claims under 28 U.S.C. § 1367.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

## PARTIES

15. Ms. Atkins is a natural person residing in Chesterfield County, Virginia. She is a consumer as defined by 15 U.S.C. § 1602(i) and 12 C.F.R. § 1026.2(a)(11).

3

16. Bank of America, N.A., is a foreign bank with its principal place of business in Charlotte, North Carolina. BOA is a creditor as defined by 15 U.S.C. § 1602(g) and 12 C.F.R. § 1026.2(a)(17).

## FACTS

### *Ms. Atkins's HELOC*

17. Ms. Atkins purchased her home in Midlothian, Virginia in November 1993. At the time, Ms. Atkins had completed four years of service with the United States Air Force, married, and had four young daughters.

18. Ms. Atkins financed her home purchase using a conventional mortgage, which she later refinanced in 1997. Ms. Atkins has remained current on her primary mortgage since she purchased her home, despite going through a divorce, raising her four children as a single mother, and experiencing financial difficulties from job changes and the COVID-19 pandemic.

19. In 2005, Ms. Atkins decided to renovate her kitchen and make several other home improvements. To do so, she obtained a HELOC from BOA with a credit limit of $60,000, the terms of which were set forth in a "Bank of America Equity Maximizer Agreement and Disclosure Statement" (the "HELOC Agreement"). *See* **Exhibit 1**.

20. The HELOC was secured against Ms. Atkins's home by a deed of trust.

21. Under the terms of the HELOC Agreement, BOA agreed that:

> If you have a balance owing on your Credit Line Account or have any account activity, [BOA] will send you a periodic statement. [The statement] will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

(the "Periodic Statements Covenant"). *See* Exhibit 1 at p. 3.

22. In 2007, Ms. Atkins and BOA modified the HELOC to increase the credit limit to $86,000. The modification did not alter the Periodic Statements Covenant.

23. For years, Ms. Atkins remained current on both her primary mortgage and her HELOC, working hard while raising her daughters.

24. In 2018, Ms. Atkins fell behind on her HELOC. In response, BOA charged off the HELOC loan and stopped sending monthly statements to Ms. Atkins. Nonetheless, even after the charge off, Ms. Atkins continued to make monthly payments to BOA through December 2019, which BOA accepted and attributed to the pre-charge off balance of the loan.

25. Eventually, with no statements disclosing amounts owed on the HELOC, Ms. Atkins stopped sending in payments.

26. Indeed, by not sending monthly statements, Defendant and its predecessors-in-interest acted contrary to the terms of the HELOC Agreement and federal law, leading Ms. Atkins and similarly situated consumers to reasonably believe that the HELOC loans under those agreements had been discharged or the outstanding balances were waived. Ms. Atkins and the putative class members relied on this reasonable belief in making debt obligation and repayment decisions, to their later detriment.

27. In fact, under federal law, BOA was required to provide statements for any billing cycle at the end of which there was an outstanding balance. 15 U.S.C. § 1637(b); 12 C.F.R. § 1026.7. By not providing periodic statements, therefore, BOA confirmed to Ms. Atkins and the putative class members that no outstanding balance, including interest and fees, existed on their HELOC loans for the billing cycles in question.

28. Further, by not providing monthly statements to Ms. Atkins and the putative class members, Defendant rendered it impossible for Ms. Atkins and the class members to perform

5

under their respective credit line agreements and avoid the accumulation of debt that Defendant now seek to enforce, as Ms. Atkins and the class had no notice of the outstanding or accumulated debt such that they could repay it.

29.     By acting as if the debts had been discharged or waived and then seeking, years later and with no notice to Ms. Atkins and the class members, to enforce the debt, Defendant has waived its right to enforce the debts in question.

30.     If she knew that the HELOC was still outstanding and had not been charged off as BOA claimed, Ms. Atkins would have continued to pay it, or to seek a modification if possible.

31.     After many years working for a local advertising agency, Ms. Atkins was laid off in April 2023. She decided to retire, as her age (66) made it difficult to find new work in her field. She now serves as a caregiver for her 86-year-old mother, whom she intends to move into her home within the next year or so.

32.     Then, BOA filed a lawsuit against Ms. Atkins in the Circuit Court for the County of Chesterfield (the "Chesterfield County Lawsuit"), again claiming that Ms. Atkins owed $78,625.62 on her HELOC.

33.     In the years that she had not received monthly statements on her HELOC, Ms. Atkins had started to build equity that would provide her and her children with all-important stability.

34.     Based on BOA's representations, she now believed that she had lost considerable equity, which in turn severely impacted her financial planning and debt repayment decisions.

35.     Unable to meet BOA's demands, Ms. Atkins's home remains under threat of a foreclosure sale, and she faces a judgment against her for amounts that she had no opportunity to prevent from accumulating.

36. Because of Defendant's conduct, Ms. Atkins has suffered, and continues to suffer, financial and emotional harm, including but not limited to a reduction in her present and future home equity; deferral of repayment on her legitimate debts; emotional distress caused by the inaccurate amounts claimed in the Chesterfield County Lawsuit; and distress from Defendant's surprise institution of the Lawsuit. She has also suffered severe emotional distress from seeing her children worry about the loss of their family home—a home that the children themselves have worked hard to keep—after nearly two decades.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings her Count One on behalf of herself and the following class of similarly situated consumers, of which she is a representative and member (the "TILA Class"):

> All consumers who received a home equity line of credit: (i) of which BOA is the creditor; and (ii) for which BOA demanded payment of amounts allegedly owed for periods in which BOA or a predecessor-in-interest did not provide periodic statements.

38. Plaintiff also brings Counts Two and Three on behalf of herself and the following class of similarity situated consumers, of which she is a representative and member (the "Contract Class"):

> All consumers who received a home equity line of credit: (i) of which BOA is the owner; (ii) that contained a provision in the terms of the home equity credit line agreement requiring periodic statements; and (iii) for which BOA has attempted to collect or collected principal or interest, fees, or other charges for periods in which it or a predecessor-in-interest did not provide periodic statements.

39. Each of the above Classes satisfies the requirements of Fed. R. Civ. P. 23(b)(2) with respect to the below requests for injunctive and declaratory relief because Defendant has acted or refused to act on grounds that apply generally to each Class—namely, by universally assessing balances, interest, and fees for periods in which they or a prior owner/servicer did not provide

monthly statements as required by the terms of the relevant credit line agreements—so that final injunctive and corresponding declaratory relief is appropriate with respect to the class as a whole.

40. Each Class also satisfies the requirements of Fed. R. Civ. P. 23(b)(3) with respect to the below class claims for damages because questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

41. **Numerosity**: Each Class is so numerous that joinder of all class members is impracticable. Given the volume of Defendant's business, there are thousands of class members in each Class.

42. **Commonality**: This case presents common questions of law and fact, including but not limited to:

   a. Whether BOA is a creditor under TILA and Regulation Z;

   b. Whether BOA violated TILA and Regulation Z by assessing principal, interest, and fees against the class members for periods in which they had not provided the periodic disclosures required by law;

   c. Whether BOA breached the terms of the Contract Class's credit line agreements requiring the owner of the HELOC to provide periodic statements;

   d. The proper scope of declaratory relief;

   e. The proper measure of damages.

43. **Typicality**: Plaintiff's claims are typical of the members of each Class. The TILA and breach of contract violations suffered by Plaintiff are typical of those suffered by other Class members, and BOA treated Plaintiff consistently with other Class members, in accordance with its standard policies and practices. Discovery will show that BOA used automated processes to assess

the disputed amounts and assert in form correspondence that those amounts were owed by Plaintiff and the class members. Discovery will also show that BOA maintains electronic records indicating which class members it has sent or not sent period statements to, as well as the dates on which such statements were sent. Discovery will also show that Defendant maintains electronic records of amounts they contend are owed by each borrower, including records of the dates on which each payment was made.

44. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Classes because she and her experienced counsel are free of any conflicts of interest and are prepared to vigorously litigate this action on behalf of the Classes.

45. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to each Class predominate over any questions affecting only individual members of each Class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. BOA's conduct, as described in this Complaint, stems from common and uniform policies and practices, resulting in common violations of TILA and common law. Members of each Class do not have an interest in pursuing separate actions against BOA, as the nature of each Class member's individual claim would require substantial expense, burden, and uncertainty of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation, which might result in inconsistent judgments concerning BOA's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

46. The administration of this action can be handled by class counsel or a third-party administrator, and the costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

### COUNT ONE:
### VIOLATIONS OF TILA, 15 U.S.C. § 1637(b); 12 C.F.R. § 1026.7
### (*Individually and on Behalf of the TILA Class*)

47. Plaintiff incorporates the preceding allegations.

48. BOA violated 15 U.S.C. § 1637(b) and 12 C.F.R. § 1026.7 by demanding payment from Ms. Atkins and the TILA Class of amounts that were not assessed against Plaintiff and the TILA Class in periodic statements that disclosed those amounts.

49. For example, BOA failed to send Plaintiff monthly statements since at least 2018.

50. Plaintiff and the putative class members thus had no notice that a balance existed, and they were deprived of the opportunity to pay down the HELOC to prevent an increasing balance from reducing the equity in their home.

51. Because of Defendant's violations of 15 U.S.C. § 1637(b) and 12 C.F.R. § 1026.7, Plaintiff and the putative class have suffered actual damages, including significant emotional distress, reduction in their present and future home equity, deferral of repayment on their legitimate debts, and, in the case of some class members, payment of the improperly assessed principal, interest and fees.

52. Based on Defendant's violations, Plaintiff and the putative class are entitled to actual damages, statutory damages per each violation, reasonable attorneys' fees, and costs under 15 U.S.C. § 1640(a).

### COUNT TWO:
### Breach of Contract
### (*Individually and on Behalf of the Contract Class*)

53. Plaintiff incorporates the preceding allegations.

54. Plaintiff and the putative class members each obtained home equity lines of credit that included terms requiring the owner of the credit line to provide periodic statements.

55. BOA breached the terms of Plaintiff's and the putative class members' credit line agreements when it failed to provide the periodic statements required under the terms of those agreements but nonetheless assessed principal, interest and fees against Plaintiff and the putative class members for the periods in which it and its predecessors-in-interest failed to provide periodic statements.

56. The failure to provide Plaintiff and the putative class with periodic statements prevented them from making timely payments on their HELOC loans and thus avoiding the assessed amounts. BOA's breach of these agreements thus precludes it from assessing amounts accumulated for periods in which it or its predecessors-in-interest were in breach.

57. BOA has also waived and/or is estopped from seeking payment of the principal, interest and fees assessed during periods in which it or its predecessors-in-interest failed to provide periodic statements, which was fundamentally inconsistent with the continued existence of the credit line agreements which BOA now seeks to enforce.

58. Additionally, or alternatively, BOA's conduct breaches the covenant of good faith and fair dealing.

59. Where a contract affords one party the ability to make discretionary decision, the implied covenant of good faith and fair dealing limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.

60. BOA violated the covenant of good faith and fair dealing by assessing principal, interest and fees for periods in which it or its predecessors-in-interest had not provided the monthly statements they were required to provide to Plaintiff and the putative class members.

61. Plaintiff and the putative class members have suffered harm because of BOA's breach, including, but not limited to, the risk of foreclosure of their homes, reduced financial capacity, and loss of equity, and, for some putative class members, the payment of the improperly assessed principal, interest, and fees.

62. Because of BOA's breach, Plaintiff requests that the Court award her and the putative class members actual damages and enjoin the collection of any principal, interest and fees for periods in which BOA or its predecessors-in-interest did not provide periodic statements to Plaintiff or the putative class members.

**COUNT THREE:**
**Declaratory Judgment Under 28 U.S.C. § 2201**
(*Individually and on Behalf of the Contract Class*)

63. Plaintiff incorporates the preceding allegations.

64. Because Plaintiff and class members were not provided periodic statements, all interest and fees assessed for periods in which BOA or its predecessors-in-interest failed to provide periodic statements are waived and/or unenforceable.

65. Plaintiff and the putative class members did not owe this interest and fees because Plaintiff's and the putative class member's repayment of the interest and fees was rendered impossible by BOA's and its predecessors-in-interest's failure to provide periodic statements notifying them of any outstanding balance or interest and fees, thereby excusing Plaintiff's and the putative class member's nonperformance and waiving BOA's right to enforce the amounts allegedly owed.

66. Based on Defendant's and the predecessors-in-interest's failure to provide periodic statements, as required by contract and law, Plaintiff and the putative class members also reasonably believed that their HELOCs had been discharged such that they no longer owed any

debt on those HELOCs, which belief Plaintiff and the class relied on in making debt obligation and repayment decisions during the period in which they were not receiving such statements. BOA is thus now estopped from enforcing the purported debt obligations under Plaintiff's and the class member's credit line agreements.

67. Plaintiff and members of the class are subject to ongoing harm absent a declaration that interest and fees are waived and/or unenforceable, including the accumulation of additional debt, adverse credit reporting of the invalid loans, and abusive collection practices.

68. The dispute and controversy is a justiciable matter that is not speculative, and a resolution by this Court will determine the rights and interests of the parties to the loan contracts as well as the validity, if any, of the disputed interest and fees,

69. Pursuant to 28 U.S.C. § 2201, there is an actual justiciable controversy, and a declaratory judgment is the appropriate mechanism for resolving the ongoing attempted imposition of the interest and fees.

70. Accordingly, Plaintiff seeks a declaratory judgment that all interest and fees assessed for periods in which BOA or its predecessors-in-interest failed to provide periodic statements are waived and/or unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the putative class members, moves for class certification and for statutory and actual damages, injunctive and declaratory relief, and attorneys' fees and costs, as pleaded above, against BOA, as well as for pre-judgment and post-judgment interest at the legal rate, and any other relief the Court deems proper.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
**PLAINTIFF**

By: /s/ Dale W. Pittman
Dale W. Pittman, VSB #15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
804-861-6000
804-8613368 (Fax)
Email: dale@pittmanlawoffice.com

Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*